UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HBM HOLDINGS LIMITED and HARBOUR ANTIBODIES U.S. INC., <br>    Plaintiffs, <br><br> v. <br><br> WEIHAO XU, <br>    Defendant. | Civil Action No. 1:24-cv-12724 |

**DEFENDANT'S REPLY BRIEF TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS – LEAVE GRANTED ON JANUARY 15, 2025**

Defendant Weihao Xu ("Defendant" and/or "Mr. Xu") respectfully submits his reply brief to plaintiffs HBM Holdings Limited ("HBM") and Harbour Antibodies U.S. Inc.'s ("Harbour"), collectively hereinafter "Plaintiffs", opposition to Defendant's motion to dismiss. Defendant submits this Reply Brief pursuant to the Court's order of January 15, 2025, **Docket 31**.

In their Opposition, Plaintiffs failed to address numerous, fatal pleading deficiencies identified and discussed in Mr. Xu's motion to dismiss. Rather, Plaintiffs rely upon the restatement of their conclusionary allegations of law based on information and belief.

HBM and Harbour are distinct legal entities[1] wherein HBM alleges to be the shareholder of Harbour.[2] However, in order for a shareholder to assert claims belonging

---

[1] As pled in the complaint, HBM is a Cayman corporation and Harbour is a Massachusetts corporation. [**Docket 1, p. 1**].
[2] HMB claims, through its equity interest Harbour, that it owns Harbour's assets. Putting aside the fact that owning an equity interest in a company does not make one an owner of that company's assets, Harbour did not own the asset at issue in the present action -- the compound. The compound is owned by Nona.

1

to a separate entity in which it holds shares, an action must be brought derivatively. *See* Mass. R. Civ. P. 23.1. HBM did not plead its claims derivatively. Alternatively, Plaintiffs could have sought to pierce their own corporate veils, if they could legally sue themselves, which they could not and did not do.

Nona Biosciences Suzhou ("Nona"), a non-party, is the entity that owns the compound at issue (the asset). At page 1 of their opposition, Plaintiffs acknowledge they did not own the Nona compound: "*Second*, while Harbour Antibodies may not directly own the Assets at issue . . ." No facts or law are identified or pled that Harbour or HBM are entitled to recover damages on Nona's asset.

The term sheets, employment agreement/NDA and e-mails are foundational to Plaintiffs' claims. Plaintiffs have alleged no material facts outside of these documents. Thus, if these documents are not admissible, their content should also be stricken, leaving Plaintiffs no factual basis to predicate its causes of action.[3] Conversely, as set forth in Defendant's motion to dismiss, the contents of these documents contradict and eviscerate Plaintiffs' claims.

Plaintiffs' opposition fails to address the fatal pleading flaws with respect to its breach of fiduciary duty claim. As pled, Mr. Xu formed Kali as an investment vehicle for Harbour, with the knowledge and consent of Harbour, as part of his duties and responsibilities. Plaintiffs reaffirm this fact at page 9 of their opposition wherein Plaintiffs do not dispute the fact they knew and approved of Mr. Xu's activities, but rather contend that the core issue is what was he asked to do by Harbour and what he did.[4] Plaintiffs

---

[3] Although Plaintiffs do not claim any of the exhibits are not authentic, attached hereto is the **Affidavit of Mr. Xu** authenticating the exhibits.

[4] "As for Xu's contention that Harbour knew about and approved of all of his activities, it is evident that Xu has misconstrued the essence of the Complaint, which lies in the nuance between what Xu was asked to

pled no material or specific facts as to how he exceeded his authority. Rather, Plaintiffs pled that Mr. Xu was to monetize the Nona compound. Mr. Xu's employment agreement sets forth what were his duties and that he reported directly to Mr. Wang, all of which he complied with.

Plaintiffs seek to bolster their claims of wrongdoing by alleging that Mr. Xu sent unspecified e-mails to himself (not third parties) containing proprietary information without pleading the contents of the e-mails or otherwise identifying the proprietary information. Plaintiffs also reference a few other e-mails that they selectively cut and pasted from, and then drew speculative conclusions. These innocuous e-mails reflect nothing more than Mr. Xu's efforts to balance the respective interests between the investors and Nona in the placement of the compound and investment funds in the Newco (Kali). Harbour had knowingly placed Mr. Xu in this role.

Mr. Xu's creation of Kali was not only disclosed, it was part of the structuring of Harbour's financing strategy (again pled in the complaint and Plaintiffs' opposition). Moreover, as the incorporator, Mr. Xu would, as a natural course, be an equity holder in the company. Neither plaintiff was a party to the Kali term sheet.[5] Putting aside the wisdom of Harbour's bringing to a close the use of Kali as an investment vehicle and the terminating of the third opportunity, Harbour, as pled, was informed of Mr. Xu's anticipated, future equity interests in Kali. And there were no facts pled that Mr. Xu received a benefit from any one of the alleged opportunities.

---

do by Harbour *for Harbour's benefit* and what Xu actually did, which covertly placed his own interests above the interests of Harbour." **Docket 26, p. 9**.
[5] However, the CEO of Harbour signed the Term Sheet and the Director of Nona. Thus, the contents of the Term Sheet can be imputed to Harbour, as well as its consent.

3

Plaintiffs defeat their breach of contract claim by alleging that Kali was created as part of Mr. Xu's duties and responsibilities at Harbour. In creating Kali and working on Kali, Mr. Xu was performing his duties and responsibilities at Harbour. Plaintiffs' remaining allegations consist of conclusions of law devoid of factual underpinnings. No facts were pled or was an explanation offered as to how Kali was providing conflicting services. And there were no facts or explanation, or reference to law, as to how there could be a conflict if Plaintiffs had known and authorized the creation of Kali as part of Harbour's investment strategy.

With respect to the e-mails purportedly containing proprietary information, they were by Mr. Xu to himself and not to a third party. Plaintiffs pled in a conclusionary fashion that the e-mails contained proprietary information without specifying what the information was or concerned, or otherwise set forth the content of those e-mails. With respect to the other e-mails referenced, there are no allegations setting forth how they demonstrate a breach of Mr. Xu's employment agreement and NDA. Plaintiffs also failed to plead recoverable damages, such as the benefit of the bargain.

With respect to Plaintiffs' interference with advantageous economic relations, Plaintiffs did not plead actual malice. Not only did Plaintiffs not plead the higher standard of actual malice, they failed to even plead facts demonstrating that Mr. Xu had knowledge or a belief that by making counter proposals in the course of his duties he was intentionally interfering with a business relation. Plaintiffs' allegations consist of conclusions of law based on speculation and conjecture. Evaluating opportunities to monetize Nona's compound is what Mr. Xu was supposed to do. As acknowledged by Plaintiffs in their

4

complaint, Plaintiffs knew of Mr. Xu's forming of Kali and that Kali was to be used as an investment vehicle for Harbour. Finally, no recoverable damages were pled.

The allegations of fraud concern Harbour and the Term Sheet, a term sheet that Harbour was not a party to. No fraudulent conduct was pled as to HBM. The complaint attributes no material false statements to Mr. Xu or material reliance by Harbour in taking any action. At best, Plaintiffs allege conclusions of law supported by opinion and speculation, which are insufficient to support a claim for fraud.

Plaintiffs failed to identify any trade secrets with specificity as required by the Act and the case law across the circuits. On the contrary, the complaint confirms that Mr. Xu, as part of his duties and responsibilities, was authorized to possess confidential information. No facts are pled that Mr. Xu shared any trade secrets with third parties or used any trade secrets for his own benefit. Moreover, Plaintiffs incorrectly seek to make a claim for infringement of trade secrets as to Nona's unspecified R&D. None of the damages alleged are the type of damages recoverable under the Act.

**DATED: January 20, 2025**  

**DEFENDANT,**  
Weihao Xu  
By his attorneys,  

*/s/Yun Cheng*  
Connie C. Dai (BBO#683330)  
Yun Cheng (BBO# 707028)  
Lion's Law, P.C.  
154 Wells Ave  
Newton, Massachusetts 02459  
(617) 232-7503 Telephone  
(781) 207-8574 Fax  
connie@lionslawgroup.com  
yun@lionslawgroup.com

*/s/Timothy K. Cutler*
Timothy K. Cutler (BBO#636124)
CUTLER & WILENSKY LLP
20 Walnut Street, Suite 1
Wellesley, Massachusetts 02481
(617) 232-7500 Telephone
tim@cutlerlegal.com

## **CERTIFICATE OF SERVICE**

I hereby certify that the above document was filed through the CM/ECF system and will be electronically sent to the registered participants as identified on the Notice of Electronic Filing (NEF) on this January 20, 2025

*/s/Timothy K. Cutler*
Timothy K. Cutler