**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| HBM HOLDINGS LIMITED, HARBOUR ANTIBODIES U.S. INC. and HARBOUR BIOMED (Shanghai) CO., LTD,     Plaintiffs, <br><br> v. <br><br> WEIHAO XU,     Defendant. | Civil Action No. 1:24-cv-12724 |
| WEIHAO XU,     Third-Party Plaintiff, <br><br> v. <br><br> JINGSONG WANG,     Third-Party Defendant. | |

<u>**DEFENDANT WEIHAO XU'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO COMPEL DOCUMENTS PURSUANT TO FED. R. CIV. P. 37**</u>

Defendant Weihao Xu ("Xu" and/or "Defendant") respectfully moves this honorable court to compel plaintiffs[1] HBM Holdings Limited and Harbour Antibodies U.S. Inc., collectively hereinafter "Harbour" and/or "Plaintiffs", to produce all responsive documents pursuant to Fed. R. Civ. P. 34.

**I.      RELEVANT BACKGROUND**

The present lawsuit is fundamentally a breach of loyalty claim arising out Plaintiffs' claim that Defendant, Harbour Antibodies U.S. Inc. ("Harbour Antibodies") ex-employee, failed to maximize the purchase price for a bioscience pharmaceutical compound known as HBM7020-BCMAxCD3 (the "Compound"). In or about 2024, Harbour Antibodies,

---

[1] Harbour BioMed (Shanghai) Co. Ltd. was not a party to this action until after the service of Defendant's First Requests for the Production of Documents.

rebranded the Compound and placed the Compound back on the market.[2] As a way of monetizing the Compound, Jingsong Wang ("Wang") Chairman of the Board, CEO and a director of Plaintiffs and Third-Party-Defendant, authorized the formation of a new entity, separate and distinct from the Plaintiff entities, to serve as an investment vehicle, which industry jargon generically refers to as a "NewCo". Pursuant to Wang's authorization, Defendant formed a NewCo in March of 2024 and named it Kali Therapeutics (also referred to as CytoKali). The idea behind Kali was that the Compound would be transferred by Nona Biosciences Suzhou ("Nona")[3] to Kali and investors would infuse Kali with capital.  In return for contributing to the Compound, Nona would receive financial payments along with equity in Kali. Nona also was to receive a lucrative contract to develop the Compound into a marketable drug.  Wang executed the relevant documents structuring the deal between Kali and the investors.  Defendant was to be the president as requested by the investors and set forth in the deal documents agreed to by Wang, and Wang was to be the Chief Scientific Officer, and both were to receive equity interests in Kali.

However, following the settling of the financial terms of the deal, but before the deal was finalized, Wang terminated Defendant's employment with Harbour and notified Kali that Nona was withdrawing from the deal. Approximately a month later, Wang approached Kali's potential investors and sought to revive the deal without the involvement of Kali and Defendant. Unable to persuade the

---

[2] Plaintiffs had deemed the Compound to have no value and took it off the market. Defendant, following his hiring in December of 2021, re-evaluated the Compound's use and determined it could be the base of other medical solutions, specifically for the development of oncology drugs. The Compound was accordingly rebranded as a platform for the development on oncology drugs.

[3] One of the elephants in room in the present case is that Plaintiffs did not own the Compound and were not intended shareholders in Kali. The intended shareholders included the investors, Wang, Defendant and Nona, not Plaintiffs. Plaintiffs' standing remains an unresolved issue.

Kali investors to recommit funding for the Compound with him serving as the lead, Wang returned to China and initiated this lawsuit. The suit alleges that Defendant breached his fiduciary duties to Harbour and its Chinese parent and affiliates by failing to negotiate the most financially lucrative deal for the Compound. Their basis is that there were two other potential opportunities that Defendant did not adequately pursue that Plaintiffs now claim had the potential for a higher return.

The causes of action alleged are breach of fiduciary duty, breach of employment contract, interference with advantageous economic relations, fraud, and misappropriation of trade secrets. All of the wrongdoings alleged purportedly occurred from middle of January 2024 to June of 2024. The scope of the damages set forth in the complaint and Plaintiffs' initial disclosures are Defendant's salary, reimbursement of the salaries of two employees who worked with Defendant on Kali and attorney fees incurred by Plaintiffs related to the Kali deal.

## II.    LEGAL BASIS OF THE PRESENT MOTION

The present motion is brought pursuant to Fed. R. Civ. P. 37 because Plaintiffs failed to answer document requests going to the core of their purported claims. The following is the applicable portions of the Rule:

> *In General.* On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action. **Fed. R. Civ. P. 37(a)(1)**.

*    *    *

> *To Compel a Discovery Response.* A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if: … (iv) a party fails to produce documents or fails to

respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34 . … **Fed. R. Civ. P. 37 (a)(3)(B)(iv).**

*        *        *

(4) *Evasive or Incomplete Disclosure, Answer, or Response*. For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond. **Fed. R. Civ. P. 37 (a)(4)**.

## III.    GENERAL DOCUMENTS SOUGHT

Defendant seeks the production of documents responsive to requests numbers 13-14, 16-18, 21-29, 37-38, 42-43, and 56-63.  In response to these requests, Plaintiffs qualified their responses by stating that they would produce those documents that they deem relevant. Despite best efforts to have Plaintiffs withdraw this qualification and produce all responsive documents that are not privileged, Plaintiffs have refused to change their position and declined to provide all responsive documents. To avoid the potential for Plaintiffs withholding key documents based on their rational that the documents sought are not relevant (irrespective that could lead to relevant documents), Defendant was left with no alternative but to file this motion.    The following is the qualifying language at issue:

Harbour will produce non-privilege, responsive … that it locates, after conducting a reasonably diligent search, that concern the terms/subject matters referenced above to the extent that they are relevant to any of the claims asserted in, or defenses to, this case.

Attached and incorporated herein is a true and correct copy of Plaintiff's Responses to Document Requests marked as **Exhibit 1**.[4]

---

[4] It would be unnecessarily repetitive and long to repeat each and every request and responses thereto; as such, Defendant has attached and incorporate Plaintiffs' Responses to Document Requests in their entirety.

The court is respectfully requested to order Plaintiffs to amend their responses by deleting qualifying language and produce all responsive documents, except those documents that are privileged.

A.     **Request 68**

Plaintiffs seek by way of their complaint recovery of legal fees incurred during Defendant's employment related to raising capital for the Compound and/or selling/licensing the Compound.  The following is paragraph 82 of Plaintiffs' Amended Complaint setting forth its claimed damages [**Docket 54, P. 18**]:

82. The full extent of Harbour's damages from Xu's improper conduct continue to be investigated, but it is clear that, at a minimum, Xu has caused damage to Harbour relating to the following:

a. opportunities to benefit from exclusively licensing and/or investing in Harbour's Assets on terms and at prices that were not tainted by Xu's self-interest in an amount well in excess of $75,000;

b. the benefits of Xu's promised exclusive work for Harbour, in the amount of at least his annual salary and benefits which exceeds $75,000;
c. the exclusive work of two senior employees who were actively collaborating with Xu, in the amount of at least their annual salaries and benefits, which each exceed $75,000;
d. the reimbursements made to Xu for his improper expense submissions that were for the benefit of Kali and/or Xu's own self-dealing, but not for the benefit of Harbour, in an amount to be determined at trial; and
e. **expenses (including legal fees) incurred by Harbour related to the 4/21 Term Sheet, negotiations, and potential deal closing**. (emph. added).

This is a distinct damage claim separate from recovery of fees incurred during the course of litigating a pending matter.  As such, Defendant has requested production of all documents supporting this specific damage claim of legal fees incurred in 2024 prior to the filing of the present action, which includes fee statements from 2024 for which Plaintiffs are seeking as damages.

**REQUEST NO. 68**

Provide all legal bills, with description of legal work, YOU are seeking recovery upon as part of YOUR claims of damages in the above-captioned case.

**RESPONSE:**

Harbour objects to this Request to the extent it seeks documents that are protected by the attorney-client privilege, work product doctrine, and/or the joint defense and common interest privileges, and will not produce such documents.

Harbour also objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of this case.

Subject to and without waiver of the foregoing general and specific objections, Harbour will produce non-privileged, responsive documents that it locates, after conducting a reasonably diligent search, that are sufficient to show the legal bills that Harbour has paid and is seeking to recover in this case. *See* **Exhibit 1**.

The court is respectfully requested to order Plaintiffs to produce copies of all legal bills, time records, time sheets and all other document containing descriptions of all legal services provided and the cost of those services that constitute and/or concerns their claim of damages in the present action.

B.  <u>Request 69</u>

Defendant is seeking all documents concerning the value of (both negative and positive) of the purported trade secrets claimed to misappropriated in the above-referenced action.  Rather than agreeing to provide those documents, Plaintiffs have unilaterally sought to restrict the request to those documents sufficient to show the value. With all due respect, Defendant is entitled to all documents demonstrating the value of the trade secrets, not just a selected few that Plaintiffs unilaterally deem show the value of the trade secrets.

**REQUEST NO. 69**

Produce any and all DOCUMENTS setting forth the value of each trade secret YOU claim XU misappropriated.

**RESPONSE:**

Harbour objects to this Request to the extent it seeks documents that are protected by the attorney-client privilege, work product doctrine, and/or the joint defense and common interest privileges, and will not produce such documents.

Harbour also objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of this case.

Subject to and without waiver of the foregoing general and specific objections, Harbour will produce non-privileged, responsive documents that it locates, after conducting a reasonably diligent search, sufficient to show the value of Harbour's trade secrets that Xu misappropriated. *See* **Exhibit 1**.

The court is respectfully requested to order Plaintiffs to produce all legal documents in its possession or under its control that are not privileged concerning the value of its purported trade secrets that it alleges that Defendant misappropriated.

**DATED: August 18, 2025**          **DEFENDANT,**
Weihao Xu
By his attorneys,


*/s/Connie C. Dai*
Connie C. Dai (BBO#683330)
Yun Cheng (BBO# 707028)
Lion's Law, P.C.
154 Wells Ave
Newton, Massachusetts 02459
(617) 682-7111 Telephone
(617) 307-3515 Fax
connie@lionslawgroup.com
yun@lionslawgroup.com

*/s/Timothy K. Cutler*
Timothy K. Cutler (BBO#636124)
CUTLER & WILENSKY LLP
20 Walnut Street, Suite 1
Wellesley, Massachusetts 02481
(617) 232-7500 Telephone
tim@cutlerlegal.com

## CERTIFICATE OF SERVICE

I hereby certify that the above document was filed through the CM/ECF system and will be electronically sent to the registered participants as identified on the Notice of Electronic Filing (NEF) on this August 18, 2025.

*/s/Timothy K. Cutler*
Timothy K. Cutler