**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| HBM HOLDINGS LIMITED, HARBOUR ANTIBODIES U.S. INC. and HARBOUR BIOMED (Shanghai) CO., LTD, <br>     Plaintiffs, <br><br> v. <br><br> WEIHAO XU, <br>     Defendant. | Civil Action No. 1:24-cv-12724 |
| WEIHAO XU, <br>     Third-Party Plaintiff, <br><br> v. <br><br> JINGSONG WANG, <br>     Third-Party Defendant. | |

<u>**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO COMPEL RESPONSES TO INTERROGATORIES PURSUANT TO FED. R. CIV. P. 37**</u>

Defendant Weihao Xu ("Xu" and/or "Defendant") respectfully submits this memorandum of law in support of his motion to compel plaintiffs[1] HBM Holdings Limited and Harbour Antibodies U.S. Inc., collectively hereinafter "Harbour" and/or "Plaintiffs", to fully and completely respond to Defendant's first set of Interrogatories in accordance with Fed. R. Civ. P. 33.

**I.    SUMMARY OF CASE**

The present lawsuit is fundamentally a breach of loyalty claim arising out Plaintiffs' claim that Defendant, Harbour Antibodies U.S. Inc. ("Harbour Antibodies") ex-employee, failed to maximize the purchase price for a bioscience pharmaceutical compound known

---

[1] Harbour BioMed (Shanghai) Co. Ltd. was not a party to this action until after the service of Defendant's First Requests for the Production of Documents.

as HBM7020-BCMAxCD3 (the "Compound"). In or about 2024, Harbour Antibodies, rebranded the Compound and placed the Compound back on the market.[2] As a way of monetizing the Compound, Jingsong Wang ("Wang") Chairman of the Board, CEO and a director of Plaintiffs and Third-Party-Defendant, authorized the formation of a new entity, separate and distinct from the Plaintiff entities, to serve as an investment vehicle, which industry jargon generically refers to as a "NewCo". Pursuant to Wang's authorization, Defendant formed a NewCo in March of 2024 and named it Kali Therapeutics (also referred to as CytoKali). The idea behind Kali was that the Compound would be transferred by Nona Biosciences Suzhou ("Nona")[3] to Kali and investors would infuse Kali with capital.  In return for contributing to the Compound, Nona would receive financial payments along with equity in Kali. Nona also was to receive a lucrative contract to develop the Compound into a marketable drug.  Wang executed the relevant documents structuring the deal between Kali and the investors.  Defendant was to be the president as requested by the investors and set forth in the deal documents agreed to by Wang, and Wang was to be the Chief Scientific Officer, and both were to receive equity interests in Kali.

However, following the settling of the financial terms of the deal, but before the deal was finalized, Wang terminated Defendant's employment with Harbour and notified Kali that Nona was withdrawing from the deal.

---

[2] Plaintiffs had deemed the Compound to have no value and took it off the market. Defendant, following his hiring in December of 2021, re-evaluated the Compound's use and determined it could be the base of other medical solutions, specifically for the development of oncology drugs. The Compound was accordingly rebranded as a platform for the development on oncology drugs.

[3] One of the elephants in room in the present case is that Plaintiffs did not own the Compound and were not intended shareholders in Kali. The intended shareholders included the investors, Wang, Defendant and Nona, not Plaintiffs. Plaintiffs' standing remains an unresolved issue.

Approximately a month later, Wang approached Kali's potential investors and sought to revive the deal without the involvement of Kali and Defendant. Unable to persuade the Kali investors to recommit funding for the Compound with him serving as the lead, Wang returned to China and initiated this lawsuit. The suit alleges that Defendant breached his fiduciary duties to Harbour and its Chinese parent and affiliates by failing to negotiate the most financially lucrative deal for the Compound. Their basis is that there were two other potential opportunities that Defendant did not adequately pursue that Plaintiffs now claim had the potential for a higher return.

The causes of action alleged are breach of fiduciary duty, breach of employment contract, interference with advantageous economic relations, fraud, and misappropriation of trade secrets. All of the wrongdoings alleged purportedly occurred from middle of January 2024 to June of 2024. The scope of the damages set forth in the complaint and Plaintiffs' initial disclosures are Defendant's salary, reimbursement of the salaries of two employees who worked with Defendant on Kali and attorney fees incurred by Plaintiffs related to the Kali deal.

## II.    LEGAL BASIS OF THE PRESENT MOTION

The present motion is brought pursuant to Fed. R. Civ. P. 37 because Plaintiffs failed to answer interrogatories going to the core of their purported claims. The following is the applicable portions of the Rule:

> *In General*. On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action. **Fed. R. Civ. P. 37(a)(1)**.

*    *    *

*To Compel a Discovery Response.* A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if: … (iii) a party fails to answer an interrogatory submitted under Rule 33; … **Fed. R. Civ. P. 37 (a)(3)(B)(iii).**

*        *        *

(4) *Evasive or Incomplete Disclosure, Answer, or Response.* For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond. **Fed. R. Civ. P. 37 (a)(4)**.

Further, Local Rules 33.1(b) provides that "[w]henever a party answers any interrogatory by reference to records from which the answer may be derived or ascertained, as permitted in Fed. R. Civ. P. 33(c): (1) the specification of documents to be produced shall be in sufficient detail to permit the interrogating party to locate and identify the records and to ascertain the answer as readily as could the party from whom discovery is sought…"

## III.    INTERROGATORIES[4] AT ISSUE

### A.    <u>Interrogatories 2, 4, 5, 6, 8, 17, and 19</u>

Plaintiffs have alleged wrongdoing by Defendant for failing to optimize the value of the Compound and the use of Kali, which was formed at the direction of Wang. Accordingly, Defendant served interrogatories seeking the factual basis of each of the five counts alleged by Plaintiffs, including requesting that Plaintiffs identify those documents they believe support their claims. In response, Plaintiffs refused to identify the documents that they contend support their claims. Instead, Plaintiffs mischaracterize the request as seeking what documents they intend to rely upon -- which, in turn, Plaintiffs

---

[4] Attached hereto and marked as **Exhibit 1** is a true and correct copy of Plaintiffs' Responses to Interrogatories. Plaintiffs have designated their Responses to Interrogatories as "Confidential" pursuant to the parties' Protective Order. As such, Defendant files **Exhibit 1** under seal.

state they do not know what documents they are going to rely upon and therefore refuse to identify the documents that support their claims. At this point in the litigation, as apparently confirmed by Plaintiffs' interrogatory responses, Defendant does not believe there are any documents that support Plaintiffs' allegations and desires to establish the fact that Plaintiffs do not have any documents supporting their claims.  In order to properly litigate this matter, including taking meaningful depositions, Defendant needs to know if Plaintiffs have any documents that support their allegations, and, if so, what are those documents.[5]

What makes these evasive responses particularly troubling is that Plaintiffs claim that Defendant took their confidential documents, but refuse to identify what those documents are. Even more problematic, Plaintiffs have failed and appear to refuse to identify what the confidential information is that is contained in the documents.

In its complaint, Plaintiffs referenced e-mails in three paragraphs [**Docket 54, ¶¶7, 76, 127**] as being its trade secrets. Now Wang is representing under oath and on behalf of Plaintiffs that they no longer believe those e-mails are a trade secret.  The allegation is that Mr. Xu deleted the e-mails. [**Docket 54, ¶¶7, 76**]. The other reference is that Mr. Xu transferred unspecified "trade secrets" to his personal e-mail. [**Docket 54, ¶127**]. No facts are pled specifying the nature or content of the e-mails. [**Docket 54, ¶126**]. Defendant is entitled to know what the purported e-mails are and why they are deemed

---

[5] The Court is requested to direct the Plaintiffs to be specific in their identification of documents.  In their document production, Plaintiffs produced the same documents over and over again, in an apparent effort to inflate the production and hinder Defendant's ability to identify relevant documents. Accordingly, Plaintiffs should be directed to identify the responsive document (once, not multiple times), by Bates number. Nor should the documents be identified by groups or categories.

to constitute a trade secret. Now that Plaintiffs have purportedly completed their document production, they still have not identified any responsive documents.[6]

The First Circuit has interpreted sufficient specificity in identifying wrongfully taken trade secrets to mean that the plaintiff has "separated the purported trade secrets from the other information … that was known to the trade." *Allstate Ins. Co. v. Fougere*, 79 F.4th 172, 197 (1st Cir. 2023). The Party "claiming rights in a trade secret bears the burden of defining the information for which protection is sought with sufficient definiteness to permit a court to apply the criteria for protection . . . and to determine the fact of an appropriation. *TLS Mgmt. & Mktg. Servs., L.L.C. v. Rodríguez-Toledo*, 966 F.3d 46, 53 (1st Cir. 2020).

A trade secret must be identified with sufficient definiteness to permit a court to apply the criteria for protection. *Olaplex, Inc. v. L'Oréal USA, Inc.*, 855 F. App'x 701, 711-12 (Fed. Cir. 2021); 2021 U.S. App. LEXIS 13483 ("There is a general requirement that '[a] person claiming rights in a trade secret bears the burden of defining the information for which protection is sought with sufficient definiteness to permit a court to apply the criteria for protection … and to determine the fact of an appropriation.'" Quoting *TLS Mgmt.*, 966 F.3d at 53; *Double Eagle Alloys, Inc. v. Hooper*, 2024 U.S. Dist. LEXIS 111282; 2024 U.S.P.Q.2d (BNA) 1160; 2024 WL 3166921. (For this reason, federal courts generally require plaintiffs pursuing misappropriation claims to describe the trade secrets at issue with sufficient particularity and clarity to permit their opponent -- and the Court --

---

[6] To date, Plaintiffs have produced over 100,000 pages of documents. Upon an initial review of the documents, Plaintiffs produced, at times, the same document hundreds of times, occasionally interspersing a new document. Defendant works from January 2024 to June of 2024 for Harbour and the document requests are narrowly focused on Plaintiffs' claims. Defendant simply seeks clarity as to what documents, if any, support Plaintif's allegations.

to understand the precise scope of the issue before them"). It is hornbook law that a court cannot rule on a trade secret claim unless the party claiming the trade secret precisely identifies what the trade secret is. *Phx. Co., Inc. v. Castro-Badillo*, 2024 U.S. Dist. LEXI 142336; 2024 WL 3742368. ("Establishing a claim of trade secret misappropriation requires a plaintiff to adequately describe the trade secret, as '[i]t is hornbook law that 'the parties and the court cannot accurately decide the question of whether a trade secret exists without first understanding what precisely is asserted as a secret." Quoting *Sutra, Inc. v. Ice. Exp., EHF*, 2008 Dist. LEXIS 52849, 2008 WL 2705589 at 3 (D. Mass. 2008).

Moreover, if Plaintiffs are seeking to produce documents in lieu of answering the interrogatory, Plaintiffs again must identify, with specificity the document that is responsive to the request. *See* **Fed. R. Civ. 33** and **Local Rule 33.1**.

The following are the requests followed by the portion of Plaintiffs' response that is at issue in this motion:[7]

**Interrogatory 2:**  Set forth in specific detail each and every fact and IDENTIFY each and every DOCUMENT that supports YOUR contention that HBM has standing in the above-captioned action to assert the claims alleged.

**Relevant Portions of Plaintiffs' Response:** "… Harbour has not yet identified the documents upon which it intends to rely to support its contention that Harbour BioMed has standing in this case.  Subject to and without waiver of the foregoing general and specific objections, Harbour will produce non-privileged, responsive documents that it locates, after conducting a reasonably diligent search, that Harbour contends are sufficient to demonstrate Harbour BioMed's standing."

**Interrogatory 4:** Set forth each and every fact that YOU own THE COMPOUND and IDENTIFY all DOCUMENTS that support YOUR contention that YOU own THE COMPOUND.

**Relevant Portions of Plaintiffs' Response:** "…Harbour has not yet identified each and every document that demonstrates Harbour's ownership of HBM7020.  Subject to and without waiver of the foregoing general and specific objections, Harbour will produce non-

---

[7] *See* **Exh. 1**.

privileged, responsive documents that it locates, after conducting a reasonably diligent search, that it contends are sufficient to demonstrate ownership of HBM7020."

**Interrogatory 5:** IDENTIFY each and every written and oral agreement YOU contend XU breached and IDENTIFY the specific terms of each agreement that YOU contend were breached by XU and DESCRIBE how and in what manner XU breached those terms.

**Relevant Portions of Plaintiffs' Response 5:** "…Harbour has not yet identified each and every document that demonstrates Xu's breaches. Subject to and without waiver of the foregoing general and specific objections, Harbour will produce non-privileged, responsive documents that it locates, after conducting a reasonably diligent search."

**Interrogatory 6:** Set forth and DESCRIBE each and every fact and IDENTIFY each DOCUMENT that YOU believe demonstrates that XU engaged in a conflict of interest during his employment with HARBOUR.

**Relevant Portions of Plaintiffs' Response 6:** "…Harbour has not yet identified each and every document that demonstrates Xu's conflicts of interest. The full nature and extent of those conflicts requires document discovery and deposition practice. Subject to and without waiver of the foregoing general and specific objections, Harbour will produce non-privileged, responsive documents that it locates, after conducting a reasonably diligent search."

**Interrogatory 8:** For each trade secret identified in YOUR answer to Interrogatory 7, set forth and DESCRIBE in detail each and every fact and IDENTIFY each DOCUMENT that supports YOUR claim that XU misappropriated the trade secret.

**Relevant Portions of Plaintiffs' Response 8:** "…Harbour has not yet uncovered each and every fact or identified each and every document that demonstrates Xu's misappropriations. The full nature and extent of those facts and documents requires discovery and deposition practice. Subject to and without waiver of the foregoing general and specific objections, Harbour will produce non-privileged, responsive documents that it locates, after conducting a reasonably diligent search, including documents showing that Xu sent information labeled "Confidential" to his personal email account or to his Kali email account."

**Interrogatory 17:** DESCRIBE in specific detail all COMMUNICATIONS between YOU, or on YOUR behalf, and LYFE that concerned KALI, THE COMPOUND, WANG, HARBOUR, HBM and/or XU, including when the COMMUNICATIONS took place from January 1, 2024 to the present, the sum and substance of the COMMUNICATIONS, whether the COMMUNICATIONS were oral or written, and IDENTIFY all DOCUMENTS constituting and/or memorializing the COMMUNICATIONS.

**Relevant Portions of Plaintiffs' Response 17:** "…Harbour has not yet identified each and every document that may be responsive to this interrogatory. Subject to and without waiver of the foregoing general and specific objections, Harbour will produce non-

privileged, responsive documents that it locates, after conducting a reasonably diligent search."

**Interrogatory 19:** IDENTIFY the date of each of the board meetings for HBM and HARBOUR from January 1, 2024 to the present and set forth who was present at each meeting, and a specific, detailed description of all discussions, presentations, proposals and votes taken at each meeting that concerned the following:

   a. TENET;
   b. QVP;
   c. LYFE
   d. KALI;
   e. THE COMPOUND;
   f. Litigation Financing of the AMGEN Litigation;
   g. Termination of XU'S employment;
   h. Creating a NewCo;
   i. Conflicts of interests involving XU;
   j. Conflicts of interest involving WANG;
   k. FRAIZER;
   l. WANG receiving equity in KALI;
   m. Termination of a deal or prospective deal with KALI;
   n. The entering, contents and/or abiding by the Confidentiality Agreement, marked as Docket No. 25-7; and
   o. The entering into, contents of and/or abiding by the Term Sheets, marked as Docket Nos. 25-4 & 25-9.

**Relevant Portions of Plaintiffs' Response 19:** "…Harbour has not yet identified all relevant and responsive board meeting minutes, but Harbour will produce non-privileged, documents that it locates, after conducting a reasonably diligent search, that are responsive to this request insofar as they pertain to the subject matter of this lawsuit."

   **B.    Interrogatory 6**

   Plaintiffs have been asked to identify all conflicts of interest they believe Defendant engaged in, but will only give a few examples. Plaintiffs improperly refer Defendant to its complaint, as well as improperly responding that it will produce documents. This is not a legally permissible response. *See* **Fed. R. Civ. P. 33** and **Local Rule 33.1**. As such, the court is respectfully requested to order Plaintiffs to fully describe all conflicts of interest they claim form the basis of their suit. Alternatively, if the examples provided are the known universe of the conflicts, then Plaintiffs should be ordered to state so.

**Interrogatory 6:** Set forth and **DESCRIBE** each and every fact and **IDENTIFY** each **DOCUMENT** that **YOU** believe demonstrates that **XU** engaged in a conflict of interest during his employment with **HARBOUR**.

**Plaintiffs' Response:**

Harbour objects to this request on the ground that it is overly broad, unduly burdensome, and not proportional to the needs of this case. Defendant does not need "each and every fact" and each document that demonstrates Xu's conflicts of interest during his employment with Harbour. Rather, facts and documents on which Harbour will rely to show that Xu engaged in conflicts of interest are all that is required. Harbour also objects to this request because it is premature and subject to discovery of information and documents that are solely in the possession, custody, or control of Xu or others.

The full extent of Xu's conflicts of interest are unknown to Harbour at this time because Harbour lacks access to Xu's Kali email account, Xu's WeChat communications, Xu's personal Gmail account, and any other means of communication Xu used outside of his Harbour-related email. Subject to and without waiver of the foregoing general and specific objections, Xu's conflicts of interest are evidenced by the facts set forth in the Complaint and in Dr. Wang's Answer to the Third-Party Complaint. Additionally, Xu's conflicts of interest are evidenced by the following, among other things:

• On March 13, 2024, Xu wrote to one investor: "I think our term[s] will be very similar to this [Second Opportunity Term Sheet] except I do not want to give revenue share with Harbour in case of a sublicense. This is not in Cytokali's interest." In short, Xu understood the conflict between Harbour's interests and Kali's interests and deliberately chose to advance the interests of Kali, to the detriment of Harbour.

• Xu stated to Lyfe and Frazier: "To act on behalf of Kali, I might need to resign from Harbour first to make it conflict free." But Xu did not resign from Harbour, nor did he disclose the potential conflict to Harbour at that time. Harbour has not yet identified each and every document that demonstrates Xu's conflicts of interest. The full nature and extent of those conflicts requires document discovery and deposition practice.

Subject to and without waiver of the foregoing general and specific objections, Harbour will produce non-privileged, responsive documents that it locates, after conducting a reasonably diligent search.  *See* **Exh. 1**

C.     **Interrogatory 7**

Defendant asks that Plaintiffs to identify with specificity and particularity each and every trade secret upon which they base their present suit; not just offer up a few examples. Instead of fully responding to the interrogatory, Plaintiffs only identify a few examples, and otherwise refer Defendant to their complaint and their anticipated Document Production.  Defendant has no clue what documents, among the 100,000 of pages of repetitive and unresponsive documents produced by Plaintiffs that are the documents forming the basis of their trade secret claim. Nor is it proper for Plaintiffs to rely on an unverified complaint and suggest that, somewhere within it, there are facts they consider to constitute the allegedly misappropriated trade secrets. Fed. R. Civ P. 33 requires all interrogatories to be responded to fully and Plaintiffs have not fully responded by failing to clearly and with particularity identify each known trade secret that they believe was misappropriated by Defendant. Furthermore, as discussed above, a plaintiff asserting a trade secret claim must specifically identify the trade secrets and distinguish them from non-trade secret material, leaving as little ambiguity as possible about what is actually being claimed.

The court is respectfully requested to order Plaintiffs to describe each claimed trade secret with specificity and particularity, as well as specifically identify each document (not by group or category and not to repeatedly identify the same document) that they believe constitute and/or contain a purported trade secret that Defendant misappropriated.

**Interrogatory 7:**  **IDENTIFY** and **DESCRIBE** with specificity and particularity each and every trade secret belonging to **HARBOUR** and **HBM** that **YOU** contend **XU** misappropriated.

**Plaintiffs' Response:**

Harbour objects to this request on the ground that it is overly broad, unduly burdensome, and not proportional to the needs of this case. Harbour also objects to this request because it is premature and subject to discovery of information and documents that are solely in the possession, custody, or control of Xu or others. The full extent of Xu's misappropriations are unknown to Harbour at this time because Harbour lacks access to Xu's Kali email account, Xu's WeChat communications, Xu's personal Gmail account, and any other means of communication Xu used outside of his Harbour-related email. Additionally, as set forth in the Complaint, Xu attempted to delete numerous emails from his Harbour-related email accounts.

Subject to and without waiver of the foregoing general and specific objections, please see the allegations in Harbour's Complaint regarding Xu's misappropriation of Harbour's trade secrets. Additionally, please the documents that will be produced by Harbour in response to the requests by Xu in this case showing that Xu sent information labeled "Confidential" to his personal email account or to his Kali email account, including but not limited to the following:

- On February 19 and 20, 2024, Xu sent Hualan deal documents to his personal Gmail account.
- On March 16, 2024, Xu forwarded an email entitled "(Cyto)Kali Notes –CONFIDENTIAL" to his personal Gmail account.
- On April 1, 2024, Xu sent a March 25, 2024 email entitled "DFCI Proposed Collaboration on Anti-CCR8 Antibody Sequences" to his Kali email account, even though the email contained the following notation: "CONFIDENTIAL AND PROPRIETARY COLLABORATION PROPOSAL INFORMATION."

Harbour has not yet uncovered each and every trade secret that Xu misappropriated. The full nature and extent of Xu's misappropriation of trade secrets requires document discovery and deposition practice. *See* **Exh. 1**.

D.    **Interrogatories 2, 5, 6, 7, 8, 12, 21, 22, 23**

In response to these interrogatories, Plaintiffs directed Defendant to search its unverified complaint for purported responsive facts and obtain the information from deposition and underlying documents rather than clearly stating the facts under oath that it believes support its claims. The interrogatories are to be responded to fully and

completely under oath. See Fed. R. Civ. 33 and Local Rule 33.1. Defendant does not know what, if any, facts Plaintiffs are relying on from the general allegations in their complaint, nor should Defendant be forced to speculate as to what Plaintiffs consider responsive. In many of their responses, Plaintiffs insist that Defendant obtain the requested information from depositions or unidentified documents. Defendant has repeatedly requested that Plaintiffs supplement their responses by stating all such facts directly in their answers—rather than merely referring to the complaint, unidentified documents or by way of deposition—and verify those responses under oath.

**Interrogatory 5**:  IDENTIFY each and every written and oral agreement YOU contend XU breached and IDENTIFY the specific terms of each agreement that YOU contend were breached by XU and DESCRIBE how and in what manner XU breached those terms.

**Relevant Portion of Plaintiffs' Response 5:**  …please see the facts set forth in the Complaint…

**Interrogatory 6:**  Set forth and DESCRIBE each and every fact and IDENTIFY each DOCUMENT that YOU believe demonstrates that XU engaged in a conflict of interest during his employment with HARBOUR.

**Relevant Portion of Plaintiffs' Response 6:** Subject to and without waiver of the foregoing general and specific objections, Xu's conflicts of interest are evidenced by the facts set forth in the Complaint and in Dr. Wang's Answer to the Third-Party Complaint.

**Interrogatory 7:**  IDENTIFY and DESCRIBE with specificity and particularity each and every trade secret belonging to HARBOUR and HBM that YOU contend XU misappropriated.

**Relevant Portion of Plaintiffs' Response 7:** Additionally, as set forth in the Complaint, Xu attempted to delete numerous emails from his Harbour-related email accounts.

Subject to and without waiver of the foregoing general and specific objections, please see the allegations in Harbour's Complaint regarding Xu's misappropriation of Harbour's trade secrets.

**Interrogatory 8:**  For each trade secret identified in YOUR answer to Interrogatory 7, set forth and DESCRIBE in detail each and every fact and IDENTIFY each DOCUMENT that supports YOUR claim that XU misappropriated the trade secret.

**Relevant Portion of Plaintiffs' Response 8:** Additionally, as set forth in the Complaint, Xu attempted to delete numerous emails from his Harbour-related email accounts.

Subject to and without waiver of the foregoing general and specific objections, please see the facts in Harbour's Complaint regarding Xu's misappropriation of Harbour's trade secrets.

**Interrogatory 12:**  IDENTIFY all persons at HARBOUR and HBM involved in the negotiations with QVP concerning THE COMPOUND and DESCRIBE with specificity their roles and participation in the negotiations.

**Relevant Portion of Plaintiffs' Response 12:** Additionally, as set forth in the Complaint, Xu attempted to delete numerous emails from his Harbour-related email accounts. Information requested by this interrogatory therefore requires document discovery and deposition practice.

**Interrogatory 21:**  Set forth in specific detail each and every fact and reason as to why KALI was formed and what role was KALI to play in the raising of capital for and/or to otherwise realize the value of THE COMPOUND.

**Relevant Portion of Plaintiffs' Response 21:** Additionally, as set forth in the Complaint, Xu attempted to delete numerous emails from his Harbour-related email accounts. Information requested by this interrogatory therefore requires document discovery and deposition practice.

**Interrogatory 22:**  DESCRIBE in specific detail YOUR decision-making process and internal discussions (including IDENTIFYING who was involved in those discussions) that led to the rejection of the proposed transactions involving KALI, and set forth any financial or reputational harm YOU claim resulted from the cancelling of this transaction, and DESCRIBE how those damages were calculated.

**Relevant Portion of Plaintiffs' Response 22:**  Subject to and without waiver of the foregoing general and specific objections, please see the information set forth in the Complaint, including but not limited to the tainted nature of the contemplated transactions once Harbour became aware of the conduct upon which the claims in the Complaint are based.

**Interrogatory 23:**  With respect to YOUR claim of misappropriation of trade secrets by XU in the above-captioned action, set forth in specific detail the losses and/or damages incurred and/or recoverable by YOU as to each trade secret and in doing so DESCRIBE with clarity and specificity how YOU calculated those damages/losses.

**Relevant Portion of Plaintiffs' Response 23:** Additionally, as set forth in the Complaint, Xu attempted to delete numerous emails from his Harbour-related email accounts. Information requested by this interrogatory therefore requires document discovery and deposition practice.

The Court is requested to order Plaintiffs to provide all responsive facts, that are not privileged, to interrogatories 2, 5, 6, 7, 8, 12, 21, 22, & 23.

## IV.    RULE 7.1(a)(2) CERTIFICATION

Pursuant to Local Rule 7.1(a)(2), prior to bringing the present motion to compel the parties conferred by correspondence outlining each and every issue they respectfully had with the opposing parties' responses to discovery requests. These correspondences were discussed over multiple days with some items being resolved. The parties have been unable to resolve their respective differences with respect to the interrogatories at issue in the present motion and thus, are requesting the Court's assistance.

## V.    CONCLUSION

Plaintiffs initiated numerous serious claims against Defendant but refuses to provide specific answers to interrogatories or identify specific documents to support their allegations as the Rules require. Without complete answers, Defendant cannot adequately prepare for the upcoming depositions and mediation. Therefore, Defendant respectfully requests that the Court order Plaintiffs to provide full and verified responses within 14 days.

**DATED: August 18, 2025**

**DEFENDANT,**
Weihao Xu
By his attorneys,

*/s/Connie C. Dai*
Connie C. Dai (BBO#683330)
Yun Cheng (BBO# 707028)
Lion's Law, P.C.
154 Wells Ave
Newton, Massachusetts 02459
(617) 682-7111 Telephone
(617) 307-3515 Fax
connie@lionslawgroup.com
yun@lionslawgroup.com

*/s/Timothy K. Cutler*
Timothy K. Cutler (BBO#636124)
CUTLER & WILENSKY LLP
20 Walnut Street, Suite 1
Wellesley, Massachusetts 02481
(617) 232-7500 Telephone
tim@cutlerlegal.com

## CERTIFICATE OF SERVICE

I hereby certify that the above document was filed through the CM/ECF system and will be electronically sent to the registered participants as identified on the Notice of Electronic Filing (NEF) on this August 18, 2025.

*/s/Timothy K. Cutler*
Timothy K. Cutler