# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION – BOSTON

| | |
|---|---|
| HBM Holdings Limited, Harbour Antibodies U.S. Inc. and Harbour BioMed (Shanghai) Co., Ltd., <br><br> Plaintiffs, <br><br> vs. <br><br> Weihao Xu, <br><br> Defendant | Case No. 24-cv-12724 |
| WEIHAO XU, <br><br> Third-Party Plaintiff, <br><br> v. <br><br> JINGSONG WANG, <br> Third-Party Defendant | |

## PLAINTIFFS' OPPOSITION
## TO XU'S MOTION TO COMPEL INTERROGATORY ANSWERS AND
## PLAINTIFFS' REQUEST FOR FEES INCURRED IN RESPONDING TO THE MOTION

Plaintiffs HBM Holdings Limited ("Harbour BioMed"), Harbour Antibodies U.S. Inc. ("Harbour Antibodies"), and Harbour BioMed (Shanghai) Co., Ltd. ("HBM Shanghai") (collectively, "Plaintiffs" or "Harbour") hereby file their Opposition to the "Motion to Compel Responses to Interrogatories Pursuant to fed. R. civ. P. 37" (the "Motion") filed by Defendant Weihao Xu ("Defendant" or "Xu") (ECF 75-77).

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................................1

I.    NO DISCOVERY CONFERENCE OCCURRED REGARDING
      HARBOUR'S INTERROGATORY ANSWERS AND XU'S MOTION
      WAS FILED IN BAD FAITH............................................................................................1

II.     XU MISSTATED THE CONTENT OF, AND REASONS FOR,
        HARBOUR'S EXTENSIVE DOCUMENT PRODUCTION .............................................5

III.    XU'S MOTION SHOULD ALSO BE DENIED BECAUSE HE
        IMPROPERLY TRUNCATED HARBOUR'S ANSWERS TO
        THE INTERROGATORIES AT ISSUE .............................................................................7

IV.     XU'S MOTION ALSO FAILS BECAUSE HARBOUR'S INCORPORATION
        OF FACTS ALLEGED IN ITS COMPLAINT INTO ITS VERIFIED
        INTERROGATORY ANSWERS IS PERMISSIBLE ......................................................18

V.      XU'S ADDITIONAL ARGUMENTS RELATING TO INTERROGATORY
        NOS. 6 AND 7 ALSO FAIL FOR SEVERAL REASONS .............................................19

        A.      Harbour's Answer to Interrogatory No. 6 is Proper ...............................................19

        B.      Harbour's Answer to Interrogatory No. 7 is also Proper ......................................19

CONCLUSION.............................................................................................................................20

## PRELIMINARY STATEMENT

Xu's Motion fails for several independent reasons. First, Xu failed comply with the requirements of Local Rules 7.1(a)(2) and 37.1, which are prerequisites to filing his Motion. Most importantly, as further discussed below, Xu's certification regarding the alleged discovery conference between the parties relating to Harbour's interrogatory answers is false. Xu's Motion was also filed in bad faith *just days before* the date on which Harbour had advised its supplemental interrogatory answers would be served, likely because Xu wanted to file a tit-for-tat motion in light of Harbour's well-founded motion to compel (ECF 72, 78) that was filed earlier that same day.

Additionally, Xu mischaracterized Harbour's document production that is referred to in some of Harbour's Interrogatory Answers, and Xu has improperly truncated Harbour's answers to certain Interrogatories, completely ignoring Harbour's valid objections. Further, Harbour's document production and its references thereto in Harbour's answers to interrogatories are appropriate, as is Harbour's incorporation of the facts from its Complaint into its verified interrogatory answers.

Harbour also disputes most of the statements made in the "Summary of the Case" contained in Xu's Memorandum (ECF 76), but will reserve arguments regarding the merits of them, since they are not pertinent to Harbour's Opposition to the Motion to Compel.

## ARGUMENT

### I. NO DISCOVERY CONFERENCE OCCURRED REGARDING HARBOUR'S INTERROGATORY ANSWERS AND XU'S MOTION WAS FILED IN BAD FAITH

Xu's filings provide none of the information about the discovery conference that is required by Rule 37.1(b)(2). That is because no discovery conference whatsoever was held regarding Harbour's answers to the interrogatories at issue in Xu's Motion.

The parties have participated in two discovery conferences in this case relating to written discovery responses. The first conference occurred on June 25, 2025, and involved discussions about (i) Xu's responses to the first set of requests for production of documents propounded by Harbour and (ii) Harbour's responses to the first requests for production of documents propounded by Xu. The June 25 discovery conference could not have addressed Harbour's Answers to Interrogatories because Xu did not serve a deficiency letter regarding the same until ***two days later*** on June 27 (to which Harbour responded on July 18).

The second meet and confer session occurred on July 31, 2025, and dealt only with the remainder of Xu's responses to Harbour's discovery requests. Xu's counsel had requested a discussion concerning third-party defendant *Dr. Wang's* responses to the discovery requests propounded by Xu (which were separate from those propounded to Harbour), but counsel for Harbour declined on that day because Xu's counsel had served deficiency letters less than 24 hours prior to that discovery conference, and counsel had not yet had a chance to confer with Dr. Wang or Harbour about the issues Xu had just raised.

Then, on August 13, Harbour wrote to Xu as follows:

> Fourth, regarding Plaintiffs' discovery responses, we have received no further correspondence from you**, nor have we engaged in a meet and confer session regarding Plaintiffs' answers to interrogatories**. Nevertheless, as indicated in our letter of August 8, **we are working on supplemental responses and anticipate being able to provide those on or before August 22**.

A true and accurate copy of Harbor's August 13 email to Xu is attached hereto as **Exhibit AAA.** Xu did not respond to that email or otherwise take issue with the August 22 date therein.

Despite the foregoing, and in an apparent knee-jerk reaction to Harbour's Motion to Compel against Xu (ECF 72, 78) and rush to get some kind offensive motion on file, on Monday August 18, Xu filed his Motion against Harbour regarding the very interrogatory answers that Harbour had agreed to supplement by Friday, August 22.

Harbour served its supplemental answers to the interrogatories at issue on Tuesday, August 19. True and accurate copies of Harbour's August 19 email to Xu and accompanying Confidential Supplemental Interrogatory Answers are attached hereto as **Exhibits BBB and CCC**, respectively.

Harbour's August 19 email reminded Xu that no meet and confer had occurred regarding Harbour's Interrogatory Answers, expressed concern that Xu's counsel nevertheless had submitted a certification of same to the Court, and stated that the filing was in bad faith because it occurred prior to reviewing Harbour's Supplemental Answers. Harbour also urged Xu to withdraw the Motion. *See* Exhibit BBB. Xu refused to do so. True and accurate copies of subsequent correspondence between the parties regarding Xu's failure to comply with the requirements prior to filing a Motion to Compel are attached hereto as **Exhibit DDD.**

Thus, Xu's Motion was filed in bad faith and without the necessary discovery conference, which allows this Court to summarily deny Xu's Motion and award attorney fees incurred by Harbour in responding to the Motion. *See, e.g., Hasbro, Inc. v. Serafino*, 168 F.R.D. 99, 100-101 (D. Mass. 1996); *Velázquez-Pérez v. Developers Diversified Realty Corp.*, 272 F.R.D. 310, 312 (D.P.R. 2011) ("Thus, plaintiff['s] failure to comply with the meet and confer requirements constitutes sufficient reason to deny the motions to compel.")

The *Serafino* Court expounded on the importance of compliance with the meet-and-confer requirements in the Rules as follows:

> In its opposition, in which it also moves to strike Defendant's motion, Plaintiff asserts that Defendant has failed to comply with either Fed. R. Civ. P. 37(a)(1) or Local Rule 7.1, both of which require a moving party to confer with opposing counsel in a good faith effort to narrow issues before engaging the court in the dispute. **The Court agrees with Plaintiff and, for the reasons set forth below, denies Defendant's motion to compel without prejudice**.
>
> ***
>
> This deficiency is particularly problematical here for two reasons. **First, at least one purpose of the rules is to avoid premature motions**. It appears from the documents of record, that counsel had been conferring about the

document request and had not yet reached an impasse in the discussions before the motion was filed -- at least as far as Plaintiff was aware. In fact, on June 13, 1996, four days *before* the motion to compel was filed, Plaintiff's counsel, in apparent receipt of a draft of Defendant's motion to compel, wrote to Defendant's counsel and opined that the proposed motion would be premature for a variety of reasons. That Defendant's counsel, in reaction, may have considered the entire matter to be at an impasse, which is not evident on the record, does not excuse the failure to include the necessary certification with this Court.

**Second, the purpose of a full consultation pursuant to Local Rule 37.1(A) is to enable the parties to attempt to narrow, if not resolve, their dispute**. It is not up to the Court to expend its energies when the parties have not sufficiently expended their own. **The rules are purposeful, not arbitrary. Yet, here, the rules have been slighted in a variety of ways.**

*Hasbro, Inc. v. Serafino*, 168 F.R.D. 99, 100-101 (D. Mass. 1996) (emphasis added).

Another district court in the First Circuit also discussed the importance of the required certification relating to the discovery conference:

**It is clear that plaintiffs' certification is deficient**. First, plaintiffs do not specify if any attempt was made to discuss the discovery dispute either personally or through a telephone conference. *See Shuffle Master, Inc. v. Progressive Games Inc.*, 170 F.R.D. 166, 172 (D. Nev. 1996). **Second, only two of the emails were sent by plaintiffs to the defendants, which instead of showing a good faith effort to reach an agreement, only showed plaintiffs point of view over the objections made**. *See Antonis v. Elec. for Imaging, Inc*., 2008 U.S. Dist. LEXIS 6887, 2008 WL 169955, at *1 (D.N.H. Jan. 16, 2008) ("emails . . . do[] not meet the requirement that the parties confer in good faith about discovery issues before invoking judicial remedies"); *see also Ross v. Citifinancial, Inc*., 203 F.R.D. 239, 240 (S.D. Miss. 2001) (the meet and confer "prerequisite is not an empty formality" and "cannot be satisfied by including with the motion copies of correspondence that discuss the discovery at issue"). **Thus, plaintiffs' failure to comply with the meet and confer requirements constitutes sufficient reason to deny the motion to compel.**

*Aponte-Navedo v. Nalco Chem. Co.*, 268 F.R.D. 31, 40-41 (D.P.R. 2010) (emphasis added).

In light of the foregoing, the letters exchanged by the parties regarding Harbour's Answers to Interrogatories also cannot satisfy the meet and confer requirements, at least in part because Xu did not engage in an attempt reach an agreement or compromise with Harbour on any of the issues, but instead merely continued to assert the same complaints and/or reiterate the information

requested by the interrogatories. True and accurate copies of those discovery letters are attached hereto as **Exhibits EEE – GGG.**

In sum, because Xu's Motion was filed with a false certification, no discovery conference was held regarding Harbour's Answers to Interrogatories, the Motion was filed in bad faith when it was clear that Harbour intended to provide Supplemental Answers to the Interrogatories, and Xu failed to withdraw his Motion when given the opportunity, Xu's Motion should be denied, and Harbour should be awarded the legal fees and costs incurred in responding to this Motion, as permitted under Federal Rule of Civil Procedure 37(a)(5)(B).

## II. XU MISSTATED THE CONTENT OF, AND REASONS FOR, HARBOUR'S EXTENSIVE DOCUMENT PRODUCTION

Footnotes 5 and 6 of Xu's Memorandum (ECF 76 at p. 5 and 6, respectively) contain several misstatements regarding the content of Harbour's document production in this case.

First, Harbour has not "produced the same documents over and over again, in an apparent effort to inflate the production and hinder Defendant's ability to identify relevant documents." To the contrary, Harbour has used de-duplication technology so that exact duplicates of any responsive emails are excluded. However, the fact that each unique email may have the same or similar attachments may result in those documents being produced more than once, which is not unusual. Nevertheless, Harbour has produced all documents and communications in full compliance with the ESI Protocol that was agreed to by the parties and entered as an Order by this Court, including all required metadata which allows the documents and communications to be reviewed and sorted in a number of different ways that should make the parties' options for searching and/or culling the documents produced by Harbour virtually limitless.

Second, Harbour has not produced "the same document hundreds of times," and Harbour challenges Xu to furnish proof of that allegation. Xu also alleged in that same footnote that

"Defendant works [sic] from January 2024 to June of 2024 for Harbour and the document requests are narrowly focused on Plaintiffs' claims." However, it is undisputed that Xu was employed by Harbour from November 2021 until June 7, 2024. Additionally, as discussed in more detail in Plaintiffs' Opposition to Xu's co-pending Motion to Compel Documents, Xu's discovery requests were certainly not "narrowly focused" at all. In fact, Xu propounded very broad Requests for Documents, such as: "Produce any and all DOCUMENTS and COMMUNICATIONS that mention, reference, concern and/or discuss XU." *See* Exhibit 1 to Xu's Motion to Compel Documents (ECF 74-1) at p. 7, Request No. 18.

It is disingenuous for Xu to now claim that Harbour has produced too many documents in response to his very broad requests, especially when Xu has filed a Motion to Compel Documents to obtain an order for Harbour to produce even more (irrelevant) documents.

Additionally, the fact that Xu has required Harbour to produce so many documents also makes it difficult for Harbour to locate all relevant or responsive documents on a particular topic. Accordingly, Harbour's Supplemental Answers to several of the Interrogatories refer to the documents Harbour produced and provide further guidance to Xu on the searches that could be run to locate the documents containing the requested information. Harbour also affirmed, as required by Federal Rule of Civil Procedure 33(d) and Local Rule 33.1(b) (and relevant case law), that the information sought by Xu is located in the identified records, that describing all of those materials in narrative format would be unduly burdensome, and that the burden of deriving the answer from the identified records would be substantially the same for Harbour and Xu.

Thus, despite Xu's misrepresentations regarding Harbour's document production, Harbour has fulfilled its duties in responding to the interrogatories, and Xu's Motion relating to Interrogatory Nos. 2, 4, 5, 6, 8, 17 and 19 should be denied.

# III. XU'S MOTION SHOULD ALSO BE DENIED BECAUSE HE IMPROPERLY TRUNCATED HARBOUR'S ANSWERS TO THE INTERROGATORIES AT ISSUE

Contrary to the requirements of the Local Rules, Xu has not included each interrogatory and response at issue in his Memorandum. Instead, at pages 7-9 of Xu's Memorandum (ECF 76), Xu has included only the portion of Harbour's responses that he believes support his argument – improperly omitting Harbour's valid objections and the remainder of Harbour's substantive responses, which, as noted above, have now also been supplemented. Harbour has set forth a few of its complete responses to the interrogatories below, along with the supplemental answers that have recently been produced, in the event that the Court elects to consider Xu's Motion on the merits despite his failure to comply with the conditions precedent to filing a proper motion.

## INTERROGATORY NO. 2

Set forth in specific detail each and every fact and IDENTIFY each and every DOCUMENT that supports YOUR contention that HBM has standing in the above-captioned action to assert the claims alleged.

## ANSWER:

Harbour objects to this request to the extent it seeks information and documents that are protected by the attorney-client privilege, work product doctrine, and/or the joint defense and common interest privileges, and will not produce such documents. **Harbour also objects to this request on the ground that it is overly broad, unduly burdensome, and not proportional to the needs of this case; the threshold for standing is not high, and Defendant does not need "specific detail" regarding "each and every fact" and "each and every document" potentially relevant to standing**.

Subject to and without waiver of the foregoing general and specific objections, **Harbour BioMed has standing as set forth in the Complaint. Additionally, Harbour BioMed's standing is evidenced by the following, among other things**:



<u>SUPPLEMENTAL ANSWER:</u>

Subject to and without waiver of the foregoing general and specific objections, Plaintiffs further state that the documents produced by Plaintiffs to date demonstrate the following, among other things:



For each trade secret identified in YOUR answer to Interrogatory 7, set forth and DESCRIBE in detail each and every fact and IDENTIFY each DOCUMENT that supports YOUR claim that XU misappropriated the trade secret.

ANSWER:

Harbour objects to this request on the ground that it is overly broad, unduly burdensome, and not proportional to the needs of this case. Harbour also objects to this request because it is premature and subject to discovery of information and documents that are solely in the possession, custody, or control of Xu or others. **The full extent of Xu's misappropriations are unknown to Harbour at this time because Harbour lacks access to Xu's Kali email account, Xu's WeChat communications, Xu's personal Gmail account, and any other means of communication Xu used outside of his Harbour-related email.** Additionally, as set forth in the Complaint, Xu attempted to delete numerous emails from his Harbour-related email accounts.

Subject to and without waiver of the foregoing general and specific objections, **please see the facts in Harbour's Complaint regarding Xu's misappropriation of Harbour's trade secrets**.



████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

SUPPLEMENTAL ANSWER:

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

INTERROGATORY NO. 17

DESCRIBE in specific detail all COMMUNICATIONS between YOU, or on YOUR behalf, and LYFE that concerned KALI, THE COMPOUND, WANG, HARBOUR, HBM and/or XU, including when the COMMUNICATIONS took place from January 1, 2024 to the present, the sum and substance of the COMMUNICATIONS, whether the COMMUNICATIONS were oral or written, and IDENTIFY all DOCUMENTS constituting and/or memorializing the COMMUNICATIONS.

<u>ANSWER</u>:

Harbour objects to this request on the ground that it is overly broad, unduly burdensome, and not proportional to the needs of this case. Harbour also objects to the extent that the subject matter of the interrogatory is most efficiently explored during depositions.

**Subject to and without waiver of the foregoing general and specific objections, Harbour states that it is unclear which, if any, of the early communications between Xu and Lyfe were by or on behalf of Harbour because Xu was acting for his own self-interest during that time. However, it is clear that Xu did not inform Harbour of most, if not all, of those communications.** Accordingly, out of an abundance of caution, Harbour states that in February

<u>SUPPLEMENTAL ANSWER</u>:

Subject to and without waiver of the foregoing general and specific objections, **Plaintiffs further state that the documents produced by Plaintiffs to date demonstrate the following**, among other things:









*See* Exhibit CCC (emphasis added).

In light of the foregoing, it is clear that Harbour has not "refused to identify the documents that they contend support their claims," nor has Harbour "mischaracterize[d] the request[s] as

seeking what documents they intend to rely upon," as Xu claimed at page 4 of his Memorandum relating to Interrogatory Nos. 2, 4, 5, 6, 8, 17 and 19.

Instead, Harbour identified the overly broad nature of those interrogatories – which seek each and every fact and each and every document that supports certain contentions or allegations in the Complaint – and then Harbour provided a reasonable and fulsome answer to those interrogatories, particularly when compared to Xu's lack of meaningful narrative answers in response to the interrogatories propounded on him.

Additionally, for contention interrogatories --  such as those relating to Harbour's standing to bring the lawsuit and ownership of the assets -- it is not reasonable or proportional for Harbour to produce each and every fact and each and every document in response thereto.  Harbour's standing could be supported by each and every document ever generated that references Xu's employment by Harbour and his service to various Harbour-affiliated entities, including as an officer of some of those companies.  Similarly, Harbour's ownership of the assets could be evidenced by virtually every document that has been used to market, license, or otherwise act in connection with those assets, most of which would be completely irrelevant to the matters at issue in this case.

Moreover, all of those documents are not required to prove that Harbour has standing or that Harbour owns the assets at issue.  Therefore, Harbour has set forth certain facts and documents in its answers that Harbour believes are *sufficient to* demonstrate the contentions and allegations at issue.  If Xu's position is that those facts and documents are not sufficient, he is free to argue that at the appropriate time, but Harbour has certainly satisfied its discovery obligations with its responses to those interrogatories.

Additionally, Harbour identified its trade secrets in its Amended Complaint as follows:

125. Harbour maintains documents and data relating to its research and development ("R&D") and **business plans for licensing or otherwise monetizing the R&D ("Business Plans and Prospects")** that are used in interstate and foreign commerce. The R&D includes technical data, testing, and protocols all related to advances that Harbour's scientists have made in therapies for treating cancer patients and other applications. **The Business Plans and Prospects include contact information for the key decisionmakers at various companies, information on their levels of interests, and prospects for entering into licensing or other agreements for the R&D**. Harbour has taken all proper and reasonable measures to keep its R&D and Business Plans and Prospects secret.

126. The Business Plans and Prospects and R&D are trade secrets, integral to Harbour's business and having great independent economic and commercial value to Harbour from not being generally known or readily ascertainable through proper means to others in the industry that could benefit from them. **Business Plans and Prospects and R&D are collectively referred to herein as "Harbour's Trade Secrets." Xu knew that Harbour's trade secrets should be maintained in a confidential manner, and Xu expressly agreed to do so in the contracts he signed with Harbour.**

127. **Xu misappropriated the Trade Secrets by wrongfully accessing and forwarding the Trade Secrets to his personal email and the email addresses he created to compete with Harbour without Harbour's permission** and, on information and belief, Xu used and/or is using the Trade Secrets without Harbour's permission, all of which is the direct and proximate cause of damage to Harbour.

*See* ECF 54 at ¶¶ 125-127 (emphasis added).

Harbour further identified its trade secrets in response to Xu's interrogatories by referencing the Business Plans and Prospects that Xu sent to his personal Gmail account and to his Kali Therapeutics email account without Harbour's permission, and contrary to Xu's contractual duties to keep those materials in the strictest of confidence and not to use those materials for any purpose other than to benefit Harbour.

Although "courts have required specificity" when evaluating the adequacy of a trade secret description, **"specificity is highly fact dependent."** *Iconics*, 266 F. Supp. 3d at 456. **Ultimately, courts must approach the analysis with "a modicum of common sense"** that recognizes the fundamental purpose of requiring plaintiffs to describe their trade secrets with specificity: to allow defendants to effectively prepare a rebuttal and to ensure that the trier of fact can actually understand the claims asserted.

*Insulet Corp. v. EOFlow Co., Ltd.*, 755 F. Supp. 3d 70, 90 (D. Mass. 2024) (emphasis added); *see also Picker Int'l Corp. v. Imaging Equip. Servs.*, 931 F. Supp. 18, 41 (D. Mass. 1995) ("These documents and tests contain proprietary legends putting potential users on notice that they are intended for the exclusive use of Picker employees, and that copying and distribution is prohibited. These items too are Picker trade secrets.").

In light of the foregoing, and the additional details added to Harbour's Supplemental Answers to the Interrogatories at issue, Xu's Motion relating to Interrogatory Nos. 2, 4, 5, 6, 8, 17 and 19 (addressed in Section A of Xu's Memorandum) and relating to Interrogatory Nos. 2, 5, 6, 7, 8, 12, 21, 22, and 23 (addressed in Section D of Xu's Memorandum) should be denied.

## IV. XU'S MOTION ALSO FAILS BECAUSE HARBOUR'S INCORPORATION OF FACTS ALLEGED IN ITS COMPLAINT INTO ITS VERIFIED INTERROGATORY ANSWERS IS PERMISSIBLE

Xu claims, without citation to any legal authority, that referring to the facts in Harbour's Complaint is "not a legally permissible response." However, Xu did the same thing with his Third-Party Complaint in response to Interrogatory No. 8 propounded by Harbour. A true and accurate copy of relevant excerpts of Xu's Responses/Objections to Plaintiff's First Set of Interrogatories is attached hereto as **Exhibit HHH**, in which Xu states: "Subject to these objections, Defendant states that the bases for denial are reflected in the factual and legal allegations set forth in the Answer and Third-Party Complaint, and incorporate herein by reference."

In any event, Harbour's answers contain more than mere references to the Complaint, and requiring Harbour to reiterate all of the facts alleged in the Complaint in response to each of the interrogatories elevates form over function and serves no purpose other than to harass and burden Harbour without achieving any benefit to Xu. *See, e.g., Sabel v. Mead Johnson & Co.*, 112 F.R.D. 211, 213 (D. Mass. 1986) ("If the documents contain all of the information responsive to the interrogatories which is within the custody, control and possession of the defendant, it makes

little sense to require the defendant to retype all of the information in answers to the interrogatories."); *Rickles, Inc. v. Frances Denney Corp.*, 508 F. Supp. 4, 7 (D. Mass. 1980) ("Answers are insufficient if they fail to supply facts **which were omitted from the complaint**, and if they neither clarify nor narrow the broad issues posed by the complaint.") (emphasis added).

Accordingly, Xu's Motion relating to Interrogatory Nos. 2, 5, 6, 7, 8, 12, 21, 22, and 23 (addressed in Section D of Xu's Memorandum) should be denied for this reason as well.

## V. XU'S ADDITIONAL ARGUMENTS RELATING TO INTERROGATORY NOS. 6 AND 7 ALSO FAIL FOR SEVERAL REASONS

### A. Harbour's Answer to Interrogatory No. 6 is Proper

In addition to the acceptable incorporation of the facts from its Complaint, Harbour also objected to Interrogatory No. 6 because at this juncture it is not able to identify each and every one of Xu's conflicts of interest. As indicated in Harbour's Amended Complaint, Xu took steps to obscure his improper actions while employed by Harbour, and prior to August 22, 2025, Xu had refused to produce any meaningful set of responsive documents in this case. Moreover, Harbour is not required to identify each and every conflict of interest involving Xu, but rather only those that it intends to rely upon to prove its allegations and/or claims in this case. Thus, Xu's Motion relating to Interrogatory No. 6 fails for that reason, as well as the reasons set forth above.

### B. Harbour's Answer to Interrogatory No. 7 is also Proper

Xu's criticism of Harbour's Answer to Interrogatory No. 7 relating to its trade secrets is addressed above and will not be repeated herein for the sake of brevity. In summary, Xu's Motion fails because Harbour has sufficiently identified its trade secrets (documents marked "Confidential" and/or "Proprietary") and how Xu misappropriated them (by sending copies to his personal Gmail and Kali email accounts). Xu's Motion also fails because, as explained above, interrogatory answers are only insufficient if they omit facts that are not in the Complaint.

*See, e.g., Rickles, Inc.*, 508 F. Supp. at 7.  Thus, Xu's Motion relating to Interrogatory No. 7 should be denied for those reasons, as well as the other reasons set forth in this Opposition.

## CONCLUSION

In light of the foregoing, Plaintiffs HBM Holdings Limited, Harbour Antibodies U.S. Inc., and Harbour BioMed (Shanghai) Co., Ltd. respectfully request that the Court deny Xu's Motion to Compel Responses to Interrogatories, award Harbour its fees and costs incurred in responding to the Motion, and provide for any other or further relief as is necessary and proper.

Date: September 2, 2025

DORSEY & WHITNEY LLP

*/s/  Angela E. Dralle*_____
Christopher Karagheuzoff (BBO No. 630123)
51 West 52nd Street, New York, NY 10021
Tel: (212) 415-9200, Fax: (212) 953-7201
karagheuzoff.christopher@dorsey.com

Kent J. Schmidt (admitted *pro hac vice*)
600 Anton Boulevard, Suite 2000
Costa Mesa, CA 92626
Telephone:  (714) 800-1400
schmidt.kent@dorsey.com

Angela E. Dralle (admitted *pro hac vice*)
801 Grand Ave., Suite 4100
Des Moines, IA 50309
Telephone:  (515) 283-1000
dralle.angela@dorsey.com
**ATTORNEYS FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

I hereby certify that the above document was filed through the CM/ECF system and will be electronically sent to the registered participants as identified on the Notice of Electronic Filing (NEF) on this September 2, 2025.

_/s/ Angela E. Dralle_____
Attorney for Plaintiffs