UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HBM HOLDINGS LIMITED, HARBOUR ANTIBODIES U.S. INC., and HARBOUR BIOMED (SHANGHAI) CO., LTD.,<br><br>    Plaintiffs,<br><br>    v.<br><br>WEIHAO XU,<br>    Defendant. | No.  1:24-cv-12724-PBS |

### ORDER ON DEFENDANT'S MOTIONS TO COMPEL (D. 73, D. 75)

CABELL, U.S.M.J.

    Defendant Weihao Xu ("Xu" or "Defendant") moves to compel Plaintiffs HBM Holdings Limited, Harbour Antibodies U.S. Inc., and Harbour BioMed (Shanghai) Co., Ltd. ("HBM," "Harbour," or "Plaintiffs"), to produce certain documents (D. 73) and respond to certain interrogatories (D. 75). The court previously addressed and resolved some if not most of the issues raised in the motions at a hearing convened on December 4, 2025. This Order, written essentially for the parties, addresses the few outstanding issues that were not fully resolved, and for brevity and simplicity incorporates the relevant background and applicable legal standard from an order (D. 143) issued contemporaneously on Plaintiffs'

motion to compel (D. 72). For the reasons explained in court and below, Defendant's motions are allowed in part and denied in part.

Three central issues lie at the heart of Defendant's two motions: (1) whether Plaintiffs must produce all material that is responsive to Defendant's requests, regardless of whether Plaintiffs subjectively question its relevance; (2) how exhaustive Plaintiffs must be in their responses to interrogatories asking Plaintiffs to identify documents that underly specific claims or assertions; and (3) whether Plaintiffs, in responding to an interrogatory asking them to identify the trade secrets they claim were misappropriated, must specify those trade secrets with greater particularity.

With respect to the first issue, parties responding to discovery requests are not required to summarily produce responsive materials they believe are irrelevant, but they still must identify those materials so the requesting party may consider whether to press further for their disclosure. Thus, where Plaintiffs have declined to produce materials responsive to Defendant's requests on the ground they deem the materials irrelevant, to the extent they have further failed to identify those materials to Defendant, they are compelled to forthwith identify those materials to Defendant.

With respect to the second issue, Defendant cites Plaintiffs' responses to Interrogatory Nos. 2, 4, 5, 6, and 8, interrogatories

that largely ask Plaintiffs to identify their bases for various contentions and claims, as insufficient. Defendant takes issue with Plaintiffs' responses insofar as they do not identify *any* document pertinent to the claim or subject matter raised in the given interrogatory, but instead only note that Plaintiffs have not yet identified *every* such document. (*See, e.g.*, "Plaintiffs' Answers to First Set of Interrogatories Propounded by Defendant Xu," D. 76-3 ("Harbour has not yet identified each and every document that demonstrates . . .")).

The court agrees that this response is insufficient. At the same time, though, the court agrees with Plaintiffs that it would be unduly burdensome to comply with Defendant's requests as framed. (*See, e.g.*, D. 76-3 ("Set forth in specific detail each and every fact and identify each and every document that supports your contention that . . .")). As noted at the hearing, the court endorses an approach somewhere in the middle; Plaintiffs are ordered to make a good faith effort to identify the salient documents that may underly their claims in this case, in particular with respect to Interrogatory Nos. 2, 4, 5, 6, and 8. To the extent Plaintiffs may not have yet identified all such documents, they still must forthwith identify the ones they have.

Finally, regarding the third issue, Defendant argues that Plaintiffs' interrogatory responses do not adequately identify with sufficient particularity what trade secrets Plaintiffs are

3

alleging Defendant misappropriated. Defendant points to Interrogatory No. 7 as emblematic. The Interrogatory asks Plaintiffs to: "Identify and describe with specificity and particularity each and every trade secret belonging to Harbour and HBM that you contend Xu misappropriated." (D. 76-3 (emphases removed)). In response, Plaintiffs direct Defendant to "the allegations in Harbour's Complaint regarding Xu's misappropriation of Harbour's trade secrets." (D. 76-3 at 10). Though not specified, Plaintiffs seem to be referring to paragraphs 125-26 of the operative complaint:

> 125. Harbour maintains documents and data relating to its research and development ("R&D") and business plans for licensing or otherwise monetizing the R&D ("Business Plans and Prospects") that are used in interstate and foreign commerce. The R&D includes technical data, testing, and protocols all related to advances that Harbour's scientists have made in therapies for treating cancer patients and other applications. The Business Plans and Prospects include contact information for the key decisionmakers at various companies, information on their levels of interests, and prospects for entering into licensing or other agreements for the R&D. Harbour has taken all proper and reasonable measures to keep its R&D and Business Plans and Prospects secret.
>
> 126. The Business Plans and Prospects and R&D are trade secrets, integral to Harbour's business and having great independent economic and commercial value to Harbour from not being generally known or readily ascertainable through proper means to others in the industry that could benefit from them. Business Plans and Prospects and R&D are collectively referred to herein as "Harbour's Trade Secrets." Xu knew that Harbour's trade secrets should be maintained in a confidential manner, and Xu expressly agreed to do so in the contracts he signed with Harbour.

("Amended Complaint," D. 54-1 at ¶¶ 125-26).

In their initial response to Interrogatory No. 7, Plaintiffs also add that the trade secrets at issue are contained in produced documents wherein "Xu sent information labeled 'Confidential' to his personal email account or to his Kali email account." (D. 76-3 at 10). Plaintiffs then identify three such email communications: emails from February 19-20, 2024; March 16, 2024; and April 1, 2024. (*Id.*) Notably, Plaintiffs seem to present these emails as a non-exhaustive list of documents containing misappropriated trade secrets at issue in this case, with the full universe of trade secrets being any produced communication wherein "Xu sent information labeled 'Confidential' to his personal email account or to his Kali email account." (*Id.*)

Plaintiffs have since supplemented that discovery response with some additional direction that "some of the trade secrets that Xu misappropriated can be located in the documents produced by Harbour to date by searching for 'Confidential' in connection with Xu's Gmail address(es) and Kali email address(es)." ("Plaintiffs' Supplemental Answers to First Set of Interrogatories Propounded by Defendant Xu," D. 82-9 at 12; *see also* Plaintiffs' Opposition to Defendant's Motion to Compel Interrogatory Answers, D. 82 at 19 ("Harbour has sufficiently identified its trade secrets (documents marked 'Confidential' and/or 'Proprietary')")). Coupled with the paragraphs in Plaintiffs' complaint that detail the nature of the allegedly misappropriated trade secrets, as well

5

as the three emails Plaintiffs have specifically identified as containing such trade secrets, the court is hard pressed to fault their responses as inadequate. Plaintiffs' complaint, and in particular ¶ 125, contains a description of the trade secrets alleged to have been misappropriated, while Plaintiffs' initial and supplemental responses to Interrogatory No. 7 reasonably identify which documents in Plaintiffs' production contain those trade secrets.

In arguing otherwise, Defendant cites to First Circuit precedent for the proposition that "[a] person claiming rights in a trade secret bears the burden of defining the information for which protection is sought with sufficient definiteness to permit a court to apply the criteria for protection . . . and to determine the fact of an appropriation." *See TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo*, 966 F.3d 46, 53 (1st Cir. 2020). *TLS* is not directly on point, however, where it relates more to what a party must show to successfully prevail on or defeat a motion for summary judgment rather than what degree of particularity a plaintiff must meet in fulfilling their discovery obligations. That said, and to be clear, the court does agree that a plaintiff alleging misappropriation of trade secrets must identify the trade secret(s) with sufficient particularity to permit a defendant to prepare a defense.

6

In the court's view, Plaintiffs have done so here.  They have stated that the trade secrets at issue relate to either its R&D or its Business Plans and Prospects, and suggested they may appear in the form of "technical data, testing, and protocols all related to advances that Harbour's scientists have made in therapies for treating cancer patients and other applications" or "contact information for the key decisionmakers at various companies, information on their levels of interests, and prospects for entering into licensing or other agreements for the R&D."  (D. 54-1 at ¶ 125).  To the court, this is sufficient to alert Defendant to those secrets he is alleged to have misappropriated.

Of course, should Plaintiffs be or become aware of other specific documents that purportedly contain trade secrets that Defendant allegedly misappropriated, it goes without saying that they must immediately supplement their responses and identify those documents to Defendant.

For the foregoing reasons and the reasons stated in court at the hearing, Defendant's motions to compel (D. 73, D. 75) are ALLOWED IN PART and DENIED IN PART.

**_So Ordered._**                             /s/ Donald L. Cabell
                                        DONALD L. CABELL, U.S.M.J.

DATED: January 28, 2026